No.  20 Civ. 898 (AKH)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CORRECTION OFFICER NIVEA LOPEZ,

Plaintiff,

-against-

THE CITY OF NEW YORK and ADW MATOS,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 2-125*
*New York, New York  10007*

*Of Counsel: J. Kevin Shaffer*
*Tel.:  (212) 356-1105*
*Matter No.:  2020-014202*

Bruce Rosenbaum,
J. Kevin Shaffer,
  Of Counsel.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

ARGUMENT ............................................................................................................................... 8

      POINT I ............................................................................................................................. 8

            PLAINTIFF FAILS TO STATE A PLAUSIBLE
            CLAIM OF GENDER DISCRIMINATION OR
            HOSTILE WORK ENVIRONMENT ....................................................................... 8

      POINT II .......................................................................................................................... 17

            PLAINTIFF FAILS TO STATE A PLAUSIBLE
            RETALIATION CLAIM ......................................................................................... 17

      POINT III ........................................................................................................................ 21

            ALL TITLE VII CLAIMS AGAINST
            DEFENDANT MATOS SHOULD BE
            DISMISSED ........................................................................................................... 21

CONCLUSION........................................................................................................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Davis Polk & Wardwell, LLP*,
  850 F. Supp. 2d 392 (S.D.N.Y. 2012)......................................................................................9

*Askin v. Dept. of Educ. of the City of New York*,
  110 A.D.3d 621 (1st Dep't 2013) ...............................................................................15, 16

*Bagarozzi v. New York City Dept. of Educ.*,
  18 Civ. 4893 (RA), 2019 U.S. Dist. LEXIS 56533 (S.D.N.Y. Mar. 31, 2019) ......................12

*Baldwin v. Cablevision Systems Corp.*,
  65 A.D.3d 961 (1st Dep't 2009) ...........................................................................................20

*Bermudez v. City of New York*,
  783 F. Supp. 2d 560 (S.D.N.Y. 2011).....................................................................................14

*Cunninghan v. Consolidated Edison, Inc.*,
  2006 U.S. Dist. LEXIS 22482 (E.D.N.Y. 2006).......................................................................20

*Elgalad v. New York City Dept. of Educ.*,
  2018 U.S. Dist. LEXIS 162838 (SDNY Sep. 24, 2018)............................................................14

*Ferrante v. American Lung Ass'n*,
  90 N.Y.2d 623 (1997) ............................................................................................................15

*Fletcher v. Dakota, Inc.*,
  99 A.D.3d 43 (1st Dep't 2012) .............................................................................................17

*Fleurentin v. New York City Health & Hosps. Corp.*,
  2020 U.S. Dist. LEXIS 908 (E.D.N.Y. Jan. 3, 2020) ...........................................................13

*Garrett v. Garden City Hotel, Inc.*,
  2007 U.S. Dist. LEXIS 31106 (E.D.N.Y. 2007)......................................................................20

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993)..................................................................................................................16

*Harvin v. Manhattan & Bronx Surface Tr. Operating Auth.*,
  767 F. App'x 123 (2d Cir. 2019) ..........................................................................................16

*Henry v. NYC Health & Hosp. Corp.*,
  18 F. Supp. 3d 396 (S.D.N.Y. 2014).....................................................................................12

*Hollander v. American Cyanamid Co.*,
    895 F.2d 80 (2d Cir. 1990)..........................................................................20

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
    496 F.3d 229 (2d Cir. 2007)......................................................................9, 10

*Kelly v. Howard I. Shapiro & Assoc. Consulting Eng'rs, P.C.*,
    716 F.3d 10 (2d Cir. 2013) (per curiam)....................................................17

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015)................................................................ *passim*

*Massaro v. Dept. of Educ. of the City of New York*,
    2013 N.Y. Slip Op. 31011[U] (Sup. Ct., NY County 2013), *aff'd,* 121 A.D.3d
    569 (1st Dep't 2014) ...................................................................................14

*Mauro v. New York City Dept. of Educ.*,
    2020 U.S. Dist. LEXIS 76379 (S.D.N.Y. Apr. 29, 2020)...........................12

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973).....................................................................................8

*Patane v. Clark*,
    508 F.3d 106 (2d Cir 2007)..........................................................................8

*Patterson v. County of Oneida*,
    375 F.3d 206 (2d Cir. 2004).......................................................................21

*Pezhman v. City of New York*,
    47 A.D.3d 493 (1st Dep't 2008) .................................................................18

*Rasko v. New York City Admin. for Children's Servs.*,
    734 F App'x 52 (2d Cir. 2018) ...................................................................19

*Sank v. City Univ. of New York*,
    2011 U.S. Dist. LEXIS 125016 (S.D.N.Y. Oct. 27, 2011) ...........................9

*Shultz v. Congregation Shearith Israel*,
    867 F.3d 298 (2d Cir. 2017)..........................................................................9

*Sosa v. New York City Dept. of Educ.*,
    2020 U.S. Dist. LEXIS 56310 (E.D.N.Y. Mar. 31, 2020) ............................9

*Szewczyk v. City of New York*,
    2016 U.S. Dist. LEXIS 91856 (E.D.N.Y. July 14, 2016) ...........................13

*Thomas v. Mintz*,
    ___ A.D.3d ___, 2020 NY Slip Op. 02367 (1st Dep't Apr. 23, 2020) ...................14

*Vega v. Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015)........................................................................................9, 14, 17

*Williams v. N.Y.C. Hous. Auth.*,
   61 A.D.3d 62 (1st Dep't 2009) ................................................................................18

*Williams v. R.H. Donnelley, Corp.*,
   368 F.3d 123 (2d Cir. 2004)....................................................................................10

**Statutes**

New York City Human Rights Law, N.Y.C Admin. Code §§ 8-107 *et seq.* ........................ *passim*

New York State Human Rights Law, New York Executive Law §§ 290 *et seq.* ................. *passim*

Prison Rape Elimination Act, 42 U.S.C. §§ 15601 *et seq.* ............................................................5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x

CORRECTION OFFICER NIVEA LOPEZ,

                                    Plaintiff,              20 Civ. 898 (AKH)

            -against-

THE CITY OF NEW YORK and ADW MATOS,

                                    Defendants.
---------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

Nivea Lopez ("Plaintiff"), a female Correction Officer employed by the New York City Department of Correction ("DOC"), commenced this action on February 3, 2020, claiming that Defendants violated Title VII, the New York State Human Rights Law, New York Executive Law §§ 290 et seq. ("SHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York §§ 8-101, et seq. ("CHRL"), by discriminating against Plaintiff on the basis of her gender, and by retaliating against her for engaging in protected activity. *See* ECF Dkt. No. 1. Defendants City of New York and Assistant Deputy Warden Luis Matos (sued herein as "ADW Matos") ("Matos," and collectively "Defendants") submit this memorandum of law in support of their motion for an order pursuant to Federal Rule of Civil Procedure 12(b), dismissing Plaintiff's Complaint in its entirety for failure to state a plausible claim upon which relief can be granted.

First, Plaintiff fails to state a plausible claim of disparate treatment on the basis of her gender under Title VII, the SHRL, or the CHRL, as Plaintiff fails to plausibly allege that she

suffered an adverse employment action because of her gender.  Second, Plaintiff fails to state a plausible claim for retaliation under Title VII, the SHRL, or the CHRL, as Plaintiff fails to plausibly allege that she engaged in protected activity or a causal connection between any such protected activity and an adverse employment action.  Third, all Title VII claims against Defendant Matos should be dismissed because there is no individual liability under Title VII. Accordingly, Defendants request that Plaintiff's Complaint be dismissed in its entirety, with prejudice.

## STATEMENT OF FACTS[1]

Plaintiff has worked for the DOC as a Correction Officer since April 1999.  *See* ECF Dkt. No. 1 at ¶ 12.  Since August 24, 2009, Plaintiff has been assigned to work at Bronx Criminal Court ("BXCC").  *Id.* at ¶ 13.  Plaintiff claims that when she began working at BXCC, there were more female COs than male COs.  *Id.* at ¶ 14.  Plaintiff also claims that when she was assigned to BXCC, there were four locker rooms in the facility for COs: one for male COs, and three for female COs.  *Id.* at ¶ 15.  Plaintiff claims that the male locker room was "very large with bathroom stalls and urinals as well as a shower.  *Id.* at ¶ 15(a).  Plaintiff claims that two of the female locker rooms were large, but that one had neither a bathroom stall nor shower, and the other had only a bathroom stall but no shower.  *Id.* at ¶¶ 15(b)(ii) and (iii).  Plaintiff states that she was assigned to the first female locker room, which was small but had a bathroom stall and the only female shower in the building.  *Id.* at ¶ 15(b)(i).  As a result, Plaintiff claims that all female COs at BXCC used the shower in her assigned locker room.  *Id.* at ¶ 15(b)(iv).

---

[1] This statement of facts is derived from the allegations in the Complaint herein (ECF Dkt. No. 1) and the material allegations set forth therein are assumed to be true for purposes of this motion to dismiss only.

Plaintiff alleges that in December 2017, Defendant Matos, the Assistant Deputy Warden in command of BXCC, announced at a monthly Captain's meeting that he planned to convert one of the female locker rooms, to which Plaintiff was assigned, into a second Captain's office. *Id.* at ¶ 16. Plaintiff also alleges that in December 2017, Captains told female COs to remove their belongings from the locker room in question, or Captains would remove their belongings for them, and evict them from the locker room. *Id.* at ¶ 17. Plaintiff claims that she complained to her union delegate, CO Anderson, that women were being treated differently, would lose access to their only shower, and would not have enough lockers if they lost access to the locker room. *Id.* at ¶ 18. Plaintiff alleges that CO Anderson raised Plaintiff's concerns to Matos, but Matos said the Captains would be taking over the locker room "no matter what." *Id.* at ¶ 19. Plaintiff claims that Matos later said that Plaintiff's locker room would be converted to a locker room for male COs, and that female COs could shower in the male locker room. *Id.* at ¶ 20.

Plaintiff claims that she complained to DOC's Equal Employment Opportunity ("EEO") office after Matos said female COs could shower in the men's locker room. *Id.* at ¶ 21. Plaintiff alleges she told Stephanie Freeman of EEO in December 2017 and January 2018 that she was concerned about possible retaliation by Matos. *Id.* at ¶ 22. Plaintiff claims that after she filed her EEO complaint, Matos announced that the male and female locker rooms would be switched: female COs would be taking over the male locker room, and male COs would take over the three female locker rooms. *Id.* at ¶ 23. Plaintiff alleges that personnel from EEO toured BXCC, looked at the locker rooms, and that thereafter, "there were no more discussions about switching the female locker rooms." *Id.* at ¶¶ 24-25.

Additionally, Plaintiff alleges that she sustained a line of duty shoulder injury on January 17, 2018, and was diagnosed with a partial shoulder tear which required physical therapy. *Id*. at ¶¶ 26-27. Plaintiff states that her tour of duty ended at 3:00 pm, and her physical therapist's office closed at 5:00 pm. *Id.* at ¶ 38. Plaintiff states that she attempted to schedule physical therapy appointments for after her working hours, but that "due to high demand for appointments, Plaintiff did not have control over which therapy time slots were available." *Id.* at ¶ 36. Plaintiff further states that "[w]hile Plaintiff attempted to attend physical therapy on her own time, she was unable to attend with the frequency her doctor had proscribed." *Id.* at ¶ 42. Plaintiff claims she completed DOC paperwork and received authorization to leave work an hour early to attend physical therapy. *Id*. at ¶ 28. However, Plaintiff alleges that Defendant Matos let other COs leave work early for therapy, but "refused to schedule" Plaintiff. *Id*. at ¶ 29. Plaintiff claims that Matos "instructed Mr. McAteer, who is in charge of approving early release of COs for therapy appointments, that Plaintiff was not permitted to leave before 3PM unless the physical therapist's office actually closed at 3PM." *Id.* at p. 39.

Plaintiff alleges that from February 27, 2018 through March 27, 2018, she was supposed to attend physical therapy three times per week. *Id*. at ¶ 30. Plaintiff claims that each week she would submit her requests to leave early for physical therapy appointments, but that her requests were only approved one time. *Id.* at ¶ 31. Plaintiff alleges that Captain Andujar told Plaintiff that a request to attend physical therapy had been denied because "you have something going on with Matos and [Captain] Negron." *Id*. at ¶ 33. Plaintiff also alleges that on one occasion, Captain Stephanie Negron said that "under no circumstances was Plaintiff permitted to leave early for physical therapy." *Id*. at ¶ 34. Plaintiff claims that when she was denied permission to leave early to attend physical therapy, she "missed the grace period to show up late

and was unable to attend physical therapy those days." *Id.* at ¶ 35.  Plaintiff contends that as a result of her missing physical therapy appointments, her shoulder injury worsened from a partial tear to a complete tear.  *Id.* at ¶ 36.  Plaintiff claims that she attempted to renew her authorization to attend physical therapy on three occasions, but those attempts were denied by DOC.  *Id.* at ¶ 41.

Plaintiff alleges that she was ordered to attend a training regarding the "Prison Rape Illumination Act"[2] on April 2, 2018.  *Id.* at ¶ 43.  Plaintiff claims that she was required to attend the training in uniform, and did not have a firearm license, she asked Captain Negron for transportation to the training.  *Id.* at ¶ 45.  Plaintiff claims Negron initially denied Plaintiff's request, telling her to put a shirt on over her uniform, but eventually told Plaintiff that CO Ravanell would drive her to the training.  *Id.*  at ¶¶ 46-48.  Plaintiff alleges that when she arrived at the training facility, no trainings were scheduled.  *Id.* at ¶ 49.  Plaintiff claims that she was rescheduled for the same training on April 9, 2018.  *Id.* at ¶ 50.  Plaintiff alleges that an unidentified Captain told her to show up "a little early" for a ride to the off-site training scheduled to begin at 7:00 am.  *Id.* at ¶ 51.  Plaintiff alleges that other COs were ordered to arrive 3 hours early for the training, and were paid overtime, but Plaintiff was not ordered to appear early.  *Id.* at ¶ 53.  Plaintiff claims she arrived at BXCC at 6:45 am for a training[3] scheduled at 7:00 am, and was informed by Captain Jones that the driver left at 6:15 am.  *Id.* at ¶ 52.  As a result, Plaintiff missed the training.  *Id.* at ¶ 54.

---

[2] Plaintiff is likely referring to the Prison Rape Elimination Act ("PREA"), 42 U.S.C. §§ 15601 *et seq.*

[3] The training in question was located at the Training Academy Annex on Rikers Island.

On April 19, 2018, Plaintiff claims she received a command discipline[4] for missing the April 9, 2018 training. *Id.* Plaintiff alleges that when she requested a hearing regarding the command discipline, it "was increased from three issues to nine issues." *Id.* at ¶ 55. Plaintiff claims that she "requested a copy of her purported lateness, but was never given one." *Id.* at ¶ 56. Plaintiff states that her command discipline hearing was originally supposed to be decided by Matos, but when Plaintiff complained to her union delegate of this fact, the hearing was changed to be held before Assistant Deputy Warden Maria Texeira ("Texeira"). *Id.* at ¶¶ 57-58. Plaintiff claims that on the originally-scheduled date of her hearing, Texeira incorrectly identified the CO who was supposed to drive her to the training, as incorrectly stated that Plaintiff was ordered to appear at 6:30 am. *Id.* at ¶¶ 59-60. Plaintiff alleges that her hearing was rescheduled for May 9, 2018, in order to determine "who the actual driver was." *Id.* at ¶¶ 61-62. At the next hearing date on May 9, 2018, Plaintiff alleges Matos provided Texeira with surveillance photographs of Plaintiff which were taken outside the facility, and prior to when Plaintiff's tour of duty began. *Id.* at ¶ 62. Plaintiff claims "[t]he Genetech Operation order does not permit anyone from photographing or surveilling COs during non-working hours outside of the facility." *Id.* at ¶ 63. Plaintiff alleges Texeira told her "there was nothing that she could do because Defendant Matos was against Plaintiff," and that "Captain Negron was causing a big problem for her." *Id.* at ¶¶ 64-65. Plaintiff claims that she "turned in the paperwork to file a grievance against Defendant Matos and Captain Negron" in May 2018, "but the grievance was not actually filed until October or November 2018." *Id.* at ¶ 66.

---

[4] On June 20, 2018, Plaintiff pleaded guilty to charges related to her failure to attend this training, and agreed to accept the findings and penalty recommended by a command discipline hearing.

In August 2018, Plaintiff alleges she was suspended[5] for fifteen days without pay by Matos. *Id.* at ¶ 67. Plaintiff claims that she took vacation on August 31, 2018, and was scheduled to return from vacation and begin serving her suspension on September 12, 2018. *Id.* at ¶¶ 67-69. Plaintiff alleges that on September 11, 2018, she called her union representative to ask if she needed to appear at BXCC in full uniform in order to turn in her badge and start her suspension. *Id.* at ¶ 70. Plaintiff alleges her union representative called "the Warden's secretary who stated that Plaintiff did not need to wear a uniform to turn in her badge." *Id.* at ¶ 71. On September 12, 2018, Plaintiff claims she reported to BXCC, not in uniform, and attempted to turn in her badge to Captain Negron. *Id* at ¶¶ 72-73. Plaintiff alleges Negron told her that she needed to be in uniform, and that Matos said Plaintiff could either go home and change into uniform, receive a late slip, and commence her suspension, or she would be written up on new charges. *Id.* at ¶ 74. Plaintiff claims that she agreed to accept new charges, but that Matos told Plaintiff's union delegate that Plaintiff needed to take her post. *Id.* at ¶¶ 75-76. Plaintiff also alleges that Captain Negron ordered her to take her post, which she could not do because she did not have a uniform. *Id.* at ¶ 78. Plaintiff claims she began to cry, had a panic attack, and that an ambulance was called to assist Plaintiff. *Id.* at ¶¶ 79-80. EMTs allegedly said that because of Plaintiff's high blood pressure, Plaintiff needed to be hospitalized. *Id*. at ¶ 81. Plaintiff claims Matos told her union delegate that "plaintiff was not working and she needed to go to the hospital on her own time." *Id.* at ¶ 82. Plaintiff alleges that after her union delegate complained to Matos, Matos permitted Plaintiff's delegate to escort her to the hospital. *Id.* at ¶¶ 83-84.

---

[5] On October 17, 2018, Plaintiff pleaded guilty to charges related to using her cell phone in the BXCC female holding cell area without authority, and accepted a mandatory 15-day suspension without pay.

Plaintiff contends she was diagnosed with an anxiety attack, and that a doctor at the hospital told her to fill out a claim for workers' compensation because the anxiety attack occurred at work.  *Id.* at ¶¶ 86-87.  Plaintiff claims that she was discharged from the hospital and returned to work to turn in her workers' compensation paperwork.  *Id.* at ¶ 88.  Plaintiff alleges that her union delegate attempted to hand the paperwork to Captains Negron and Bitetti and Matos, but all three individuals refused to accept it.  *Id.* at ¶¶ 89-91.  Plaintiff claims that because her workers' compensation paperwork was not accepted, her medical bills remain unpaid.  *Id.* at ¶ 92.  Plaintiff further claims that on September 12, 2018, when Plaintiff reported to begin her suspension, she was provided with a new parking placard and returned her old parking placard.  *Id.* at ¶ 93.  Plaintiff alleges that months later, she was written up for failing to return her old parking placard.  *Id.* at ¶ 94.

Plaintiff claims that due to her inability to complete physical therapy, her shoulder injury became worse and she was placed on sick leave on December 3, 2018.  *Id.* at ¶¶ 95-98.  Plaintiff states that she had shoulder surgery in March 2019, and was out of work until June 13, 2019.  *Id.* at ¶¶ 99-100.  Plaintiff claims she still experiences extreme pain and limited mobility in her shoulder, and has not been physically cleared to return to full duty as of the date of the Complaint.  *Id.* at ¶¶ 101-103.

## ARGUMENT

### POINT I

### PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM OF GENDER DISCRIMINATION OR HOSTILE WORK ENVIRONMENT

**A.**     **Plaintiff Fails To State A Plausible Gender Discrimination Claim**

Plaintiff's gender discrimination claims under Title VII, the SHRL, and the CHRL must be dismissed because Plaintiff has not plausibly alleged that she suffered any

adverse employment actions motivated by discriminatory intent based on Plaintiff's gender. Claims of disparate treatment under Title VII, the SHRL, and the CHRL are analyzed using the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Littlejohn v. City of New York*, 795 F.3d 297 at 310, 312 (2d Cir. 2015) (Title VII); *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir 2007) ("New York courts examine claims under [the SHRL and CHRL] with the same analytical lens as corresponding Title VII-based claims"). To establish a prima facie case of discrimination under this framework, "a plaintiff must show that (1) [s]he is a member of a protected class; (2) [s]he was qualified for the position he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Littlejohn*, 795 F.3d at 307. An adverse employment action is a "materially adverse change in the terms and conditions of employment" that must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).

In order to satisfy her burden at the pleadings stage, Plaintiff must plausibly allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). Although Plaintiff may raise an inference of discrimination based on her gender by alleging that she was treated less favorably than other employees, such allegations must demonstrate that the other employees were sufficiently similarly situated to Plaintiff with regard to material aspects of her employment, such that the alleged difference of treatment is attributable to discrimination. *See Anderson v. Davis Polk & Wardwell, LLP*, 850 F. Supp. 2d

392, 407 (S.D.N.Y. 2012); *Sank v. City Univ. of New York*, 10 Civ. 4975 (RWS), 2011 U.S. Dist. LEXIS 125016, at *29-30 (S.D.N.Y. Oct. 27, 2011).

**1.**     **The Complaint Fails To Allege An Adverse Employment Action**

First, many of Plaintiff's allegations of gender discrimination fail to plausibly establish that Plaintiff suffered an adverse employment action. Plaintiff's allegations regarding proposed changes to the locker rooms at BXCC fail to establish an adverse employment action because, by Plaintiff's own admission, these proposed changes never occurred. *See Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 307 (2d Cir. 2017) ("less significant employment actions [than a notice of termination] taken by an employer, such as placing a counseling letter in an employee file, do not constitute adverse employment actions where they have been rescinded"); *see also Sosa v. New York City Dept. of Educ.*, 2020 U.S. Dist. LEXIS 56310, at *13 (E.D.N.Y. Mar. 31, 2020) (dismissing retaliation claims regarding defendants' proposed transfer of plaintiff to another school, where "[t]his proposed transfer is not enough to constitute an adverse employment action" because "the transfer never actually occurred") (citing *Shultz v. Congregation Shearith Israel of N.Y.*, 867 F.3d 298, 307 (2d Cir. 2017)).

Thus, the Complaint fails to plausibly allege that there was <u>any</u> change to Plaintiff's employment as a result of the proposed locker room changes, much less a "materially adverse change in the terms and conditions of [plaintiff's] employment" under Title VII or the SHRL. *Kassner*, 496 F.3d at 238. Moreover, the Complaint fails to allege any facts plausibly alleging that the proposed locker room changes were even remotely adverse to Plaintiff. Indeed, the locker room which the Complaint alleges female COs would be "squeezed into" (ECF Dkt. No. 1 at ¶ 23) is the same locker room which, only paragraphs earlier, Plaintiff describes as "very large with bathroom stalls and urinals as well as a shower." (*Id.* at ¶ 15(a)). Plaintiff's subjective dissatisfaction with her prospective new locker room fails to establish an adverse

employment action.  *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) ("subjective, personal disappointments do not meet the objective indicia of an adverse employment action").

Similarly, the Complaint's lengthy narrative about an incident on September 12, 2018, when Plaintiff attempted to turn in her badge and commence a 15-day suspension[6] fails to allege an adverse employment action.  *See* ECF Dkt. No. 1 at ¶¶ 67-92.  Plaintiff fails to allege that there were any changes whatsoever to the terms and conditions of her employment as a result of Defendants allegedly insisting that Plaintiff report to work in uniform to commence her suspension.  Plaintiff's vague allegations that Matos and Captains Negron and Bitetti "refused to accept" Plaintiff's "workers' compensation paperwork" plainly fail to plausibly establish an adverse employment action.  Plaintiff does not even allege that she filed a claim for workers' compensation with the New York State Workers' Compensation Board online, via mail, or by visiting a Workers' Compensation Board office.  *See* "How to File a Claim," New York State Workers' Compensation Board,  http://www.wcb.ny.gov/content/main/onthejob/howto.jsp  (last visited May 21, 2020).  Accordingly, Plaintiff's vague allegations about Defendants' alleged refusal to accept her workers' compensation paperwork fail to plausibly establish a materially adverse change in the terms and conditions of Plaintiff's employment.

---

[6] It is unclear whether Plaintiff alleges that the 15-day suspension itself was discriminatory, as the Complaint does not allege any facts regarding the suspension or the basis therefore, only that "[i]n August 2018, Plaintiff was given a 15-day suspension without pay by Defendant Matos." ECF Dkt. No. 1 at ¶ 67.  While a suspension without pay may be an adverse employment action under Title VII, the SHRL, or CHRL, for the reasons set forth *infra* at Point I.B.2, Plaintiff fails to plausibly allege even a minimal inference of gender-based animus or disparate treatment on the basis of her gender with regard to the suspension.

### 2.    The Complaint Fails To Plausibly Allege That Gender Was A Motivating Factor Behind Any Alleged Disparate Treatment

Moreover, Plaintiff offers only conclusory allegations that her gender was a motivating factor behind her allegedly disparate treatment, and does not allege facts from which even a minimal inference of gender-based animus may be inferred.   Aside from Plaintiff's allegations regarding male and female locker rooms, none of the Complaint's allegations even reference Plaintiff's gender, let alone plausibly suggest that she was treated less well than other employees because of her gender.   See ECF Dkt. No. 1 at ¶¶ 26-104.   Plaintiff does not plead any facts demonstrating direct evidence of discrimination; nor does the Complaint contain any factual allegations to create a plausible inference that Plaintiff's allegedly being denied permission to leave early for physical therapy, or her command discipline for missing an April 2018 PREA training, her 15-day suspension, the incident on September 12, 2018, or any other alleged adverse employment actions, were at all motivated by Plaintiff's gender.   *See Littlejohn, 795* F.3d at 311 ("absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.")

Plaintiff fails to identify a male Correction Officer who was allegedly treated more favorably than her, or specifically allege a single instance where a male Correction Officer was received more favorable treatment.   *See e.g. Mauro v. New York City Dept. of Educ.*, 19 Civ. 4372 (GBD) (KHP), 2020 U.S. Dist. LEXIS 76379, at *13-15 (S.D.N.Y. Apr. 29, 2020) (recommending dismissal of Title VII, SHRL, and CHRL discrimination claims for failure to plead discriminatory animus, where, in relevant part, the complaint failed to plausibly allege a single comparator to whom plaintiff was similarly situated and who allegedly received more

favorable treatment); *Bagarozzi v. New York City Dept. of Educ.*, 18 Civ. 4893 (RA), 2019 U.S. Dist. LEXIS 56533, at *18 (S.D.N.Y. Mar. 31, 2019) (dismissing Title VII discrimination claims where "besides referring to 'similarly situated younger, non-white teachers,' Plaintiff fails to identify, let alone describe, any purported comparator") (internal citation omitted); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014) (dismissing Title VII and SHRL gender discrimination claims where "the Amended Complaint does not allege that any similarly situated male employee received more favorable treatment than [plaintiff]—the Amended Complaint fails to identify, let alone describe, any purported comparator.")

Plaintiff's only attempt to plead disparate treatment is vague and conclusory allegations that "other CO's were permitted to leave work early to attend physical therapy," (ECF Dkt. No. 1 at ¶ 39) and that "other COs were ordered to arrive 3 hours early for the PRIA training," (*Id.* at ¶ 53). However, the Complaint does not allege the identities or genders of these purported individuals, in order to establish any inference of discriminatory treatment on the basis of gender. Nor does plaintiff plead facts from which it can be determined that any comparator was similarly situated to plaintiff. To the extent Plaintiff alleges her 15-day suspension was discriminatory, Plaintiff fails to allege any facts about the underlying facts of what led to that suspension, or identify any male Correction Officers who were either disciplined less severely, or not disciplined at all, for the same or substantially similar conduct. Similarly, to the extent Plaintiff alleges that Defendants refused to accept her workers' compensation paperwork because of Plaintiff's gender, Plaintiff does not identify any male Correction Officers who were granted workers' compensation for the same or substantially similar injuries.

Moreover, Plaintiff claims that many of the alleged adverse actions were taken against her by Captain Stephanie Negron, who Plaintiff identifies as female. *See* ECF Dkt. No. 1

at ¶ 89 ("Plaintiff's union delegate attempted to hand the paperwork in to Captain Negron, but she refused to take it").  The fact that Negron belongs to the same protected class as Plaintiff further belies any plausible inference that Plaintiff's gender was a motivating factor behind any of the alleged adverse actions.  *See, e.g., Fleurentin v. New York City Health & Hosps. Corp.*, 2020 U.S. Dist. LEXIS 908, at *17-18 (E.D.N.Y. Jan. 3, 2020) (dismissing Title VII, SHRL, and CHRL race discrimination claims where plaintiff's supervisor was the same race as plaintiff); *Szewczyk v. City of New York*, 2016 U.S. Dist. LEXIS 91856, at *21, n.7 (E.D.N.Y. July 14, 2016) (dismissing Title VII and SHRL gender discrimination failure to promote claims where "Plaintiff also identifies the individual Defendants involved in interviewing her… as women, which undermines her claim that Defendants discriminated against her on the basis of her gender").

Plaintiff's claim of discrimination is merely the "recitation of a false syllogism: (1) I am (insert name of a protected class); (2) something bad happened to me at work; (3) therefore, it happened because I am (insert name of protected class)."  *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011); *see also Elgalad v. New York City Dept. of Educ.*, 17 Civ. 4894 (VSB), 2018 U.S. Dist. LEXIS 162838, at *20 (SDNY Sep. 24, 2018) (citing *Bermudez*).  The pleadings fail to suggest even a minimal inference of discriminatory animus on the basis of Plaintiff's gender, or plausibly plead causation.  *See Littlejohn*, 795 F.3d at 310; *Vega*, 801 F.3d at 87.  Plaintiff has failed to allege that she was treated less favorably than similarly situated male employees, to support at least a minimal inference that the difference of treatment may be attributable to her gender.

Even under the more liberal standard of the CHRL, Plaintiff's Complaint fails to state a plausible claim of gender discrimination, due to Plaintiff's failure "to allege a single fact

to support the conclusion that any of the work conditions about which plaintiff complains were imposed on her because of her" gender. *Massaro v. Dept. of Educ. of the City of New York*, 2013 N.Y. Slip Op. 31011[U], *8-9 (Sup. Ct., NY County 2013), *aff'd,* 121 A.D.3d 569 (1st Dep't 2014) (dismissing CHRL and SHRL age discrimination claims which alleged that "younger teachers," whose ages were not specified, received better "schedules, students, access to computers, printers, books, materials, supplies," were permitted to miss departmental meetings, and where "[m]any members of the staff have asked [p]laintiff when she is going to retire" for failure to adequately plead discriminatory animus); *see also Thomas v. Mintz*, ___ A.D.3d ___, 2020 NY Slip Op. 02367, *1 (1st Dep't Apr. 23, 2020) (affirming dismissal of SHRL and CHRL discrimination claims where the Complaint "does not allege facts that would establish that similarly situated persons who were male or were not of African American descent were treated more favorably than plaintiff was," but rather, "merely asserts the legal conclusion that defendants' adverse employment actions and plaintiff's termination were due to race and gender").   Instead of supporting factual allegations, Plaintiff merely asserts her own legal conclusions that Defendants' alleged denial of her requests to leave work early for physical therapy, Plaintiff's command discipline, Plaintiff's suspension, and the incident on September 13, 2018, were because of Plaintiff's gender, which are plainly insufficient to state a plausible claim, even under the CHRL.  *See Askin v. Dept. of Educ. of the City of New York*, 110 A.D.3d 621, 622 (1st Dep't 2013).

Accordingly, this Court should dismiss Plaintiff's gender discrimination claims under Title VII, the SHRL and the CHRL for failure to state a plausible claim upon which relief can be granted.

**B.**     **Plaintiff Fails To State A Plausible Hostile Work Environment Claim**

Plaintiff has failed to plead facts sufficiently severe or pervasive to give rise to a hostile work environment claim under Title VII, the SHRL, or the CHRL.  To establish a hostile work environment claim under Title VII and the SHRL, a plaintiff must plausibly allege that her "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Littlejohn,* 795 F.3d at 320 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *Ferrante v. American Lung Ass'n*, 90 N.Y.2d 623, 629 (1997) (SHRL claims are subject to the same hostile work environment analysis as Title VII).  Courts must look at the totality of the circumstances to determine whether an environment is "hostile" or "abusive" and should consider the following exclusive list of factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's "work performance."  *Harris,* 510 U.S. at 23.

Here, Plaintiff plainly fails to allege that her workplace was so "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of" her employment.  *Littlejohn,* 795 F.3d at 320.  Indeed, Plaintiff's Complaint fails to allege any instances of "discriminatory intimidation, ridicule, and insult," by the Defendants, let alone facts sufficient to plausibly allege that the terms and conditions of Plaintiff's employment were thereby altered.  Plaintiff's allegations, at most, describe petty workplace disagreements which do not establish a cognizable hostile work environment claim.  *See, e.g., Harvin v. Manhattan & Bronx Surface Tr. Operating Auth.*, 767 F. App'x 123, 128 (2d Cir. 2019) ("Run-of-the-mill workplace conflicts, troubling though they may be, do not rise to the level of an objectively hostile workplace.").

Finally, while the CHRL's standard for a hostile work environment claim is somewhat lower than that under Title VII, Plaintiff still must plausibly allege that she was treated less well than other employees because of her protected status. *Askin v. Dept. of Educ. of the City of New York*, 110 A.D.3d 621, 622 (1st Dep't 2013). Here, Plaintiff's allegations do not support a hostile work environment claim. Plaintiff's threadbare, conclusory complaint fails to plead factual allegations plausibly showing that she was treated less well than other employees because of a protected class, or establish any link between Defendants' alleged actions and Plaintiff's gender. *Askin,* 110 A.D.3d at 622. Accordingly, Plaintiff fails to plausibly plead a hostile work environment claim under the CHRL, and Plaintiff's hostile work environment claims should be dismissed in their entirety.

## POINT II

### PLAINTIFF FAILS TO STATE A PLAUSIBLE RETALIATION CLAIM

Finally, Plaintiff's Complaint fails to state a plausible claim of retaliation under Title VII, the SHRL, or the CHRL. To state a prima facie retaliation claim under Title VII and the SHRL, a plaintiff must plausibly allege: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn,* 795 F.3d at 316; *Kelly v. Howard I. Shapiro & Assoc. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) ("the standards for evaluating…retaliation claims are identical under Title VII and the NYSHRL"). To prove causation under Title VII and the SHRL, Plaintiff must allege that the retaliation was the "but-for" cause of the employer's adverse action, i.e., that "the adverse action would not have occurred in the absence of the retaliatory motive." *Vega,* 801 F.3d at 90-91.

To state a prima facie claim for retaliation under the CHRL, a plaintiff must plausibly allege that: "(1) [she] participated in a protected activity known to defendants; (2) defendants took an action that disadvantaged [her]; and (3) a causal connection exists between the protected activity and the adverse action." *Fletcher v. Dakota, Inc.*, 99 A.D.3d 43, 51-52 (1st Dep't 2012).  The CHRL, in relevant part, defines retaliation by stating:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has **(i)** opposed any practice forbidden under this chapter, **(ii)** filed a complaint, testified or assisted in any proceeding under this chapter…

NYC Administrative Code § 8-107(7).   Accordingly, Plaintiff must plausibly establish she suffered an adverse employment action because she opposed a practice forbidden by the CHRL, and not merely because she made general workplace complaints unrelated to unlawful discrimination.  *Pezhman v. City of New York*, 47 A.D.3d 493, 494 (1st Dep't 2008) ("Filing a grievance complaining of conduct other than unlawful discrimination is not a protected activity subject to a retaliation claim under the State and City Human Rights Laws") (internal citations omitted).  Under the CHRL, "the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity."  *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 71 (1st Dep't 2009).  To prove causation under the CHRL, Plaintiff must "plausibly plead a connection between the [adverse] act and [her] engagement in protected activity."  *Id.* at 90.

In this case, Plaintiff alleges that "Defendants retaliated against Plaintiff" for filing an EEO complaint, purportedly in or around December 2017, "by engaging in conduct, including but not limited to, the following: not permitting Plaintiff to attend her physical therapy

sessions, improperly suspending Plaintiff, and photographing Plaintiff in violation of DOC rules." *See* ECF Dkt. No. 1 at ¶ 134.

First, the Complaint does plausibly allege that Plaintiff engage in protected activity. The Complaint does not allege what Plaintiff said to DOC's EEO office, stating only that "[a]fter Defendant Matos told the female COs to shower in the men's locker room, Plaintiff went to the Equal Employment Opportunity Office for DOC (hereinafter "EEO") and registered a formal complaint" and that "Plaintiff told Stephanie Freeman of EEO in December 2017 and January 2018 that she was concerned about possible retaliation by Defeendant [sic] Matos." *See* ECF Dkt. No. 1 at ¶¶ 21-22. Plaintiff's threadbare allegations about the nature of her communication with EEO plainly fail to plausibly allege that she engaged in protected activity under Title VII, the SHRL, or the CHRL.

Plaintiff also fails to plausibly allege that Defendants' purportedly "photographing Plaintiff in violation of DOC rules" would deter a reasonable person from engaging in protected activity. Plaintiff does not allege that Defendants repeatedly photographed or surveilled her, but rather, on a single occasion, used photographs from existing building surveillance cameras for the purpose of adjudicating Plaintiff's command discipline hearing. Plaintiff fails to plausibly allege that Defendants' limited use of these photos on one occasion to decide whether Plaintiff should receive a command discipline would dissuade a reasonable person from engaging in protected activity.

Similarly, Plaintiff fails to plausibly allege that Defendants' purported denials of her requests to leave work an hour early to attend her physical therapist appointments would deter a reasonable person from engaging in protected activity *See Rasko v. New York City Admin. for Children's Servs.*, 734 F App'x 52, 55-56 (2d Cir. 2018) (employer denying

plaintiff's request for a half day off to attend a doctor's appointment "does not constitute an adverse act" for the purposes of a Title VII retaliation claim).

Moreover, Plaintiff fails to plausibly allege a causal connection between her alleged conversation with Stephanie Freeman of EEO in December 2017 and January 2018 and any adverse employment action. Plaintiff presents no direct evidence of causation, apparently relying solely on the timing between her alleged EEO complaint and the events alleged in the complaint. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *See Baldwin v. Cablevision Systems Corp.,* 65 A.D.3d 961, 967 (1st Dep't 2009) (no causation where a 4 month delay exist between allegedly retaliatory act and protected activity); *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (no causation where a 3 month delay existed between protected activity and alleged retaliation); *Garrett v. Garden City Hotel, Inc.*, 2007 U.S. Dist. LEXIS 31106, *69 (E.D.N.Y. 2007) (no causation where there was a 2.5 month delay); *Cunninghan v. Consolidated Edison, Inc.*, 2006 U.S. Dist. LEXIS 22482, *55 (E.D.N.Y. 2006) (no causation where there was a 2 month delay).

Plaintiff fails to provide the Court with any basis to find that Plaintiff plausibly pleaded a causal connection between the filing of her EEO complaint and any alleged retaliatory acts on the basis of temporal proximity alone. Assuming for the purposes of this motion the truth of Plaintiff's assertion that Plaintiff "went to the Equal Employment Opportunity Office for DOC…and registered a formal complaint" in or around December 2017 (ECF Dkt. No. 1 at ¶¶ 21-22) and that this "formal complaint" constituted protected activity, Plaintiff's alleged protected activity occurred approximately two to three months before Defendants allegedly

denied Plaintiff's requests to leave early for physical therapy, five months before Plaintiff received a command discipline for missing the April 9, 2018 training, nine months before she receives the 15-day suspension, and ten months before the incident on September 12, 2018. Accordingly, Plaintiff fails to plausibly allege a causal connection between the filing of her EEO complaint and any of these actions, because the temporal gap between those events belies any inference of causation.

Therefore, this Court should dismiss Plaintiff's "Second" Cause of Action for retaliation pursuant to Title VII, the SHRL, and the CHRL for failure to state a claim, because Plaintiff's complaint fails to plausibly allege that she engaged in protected activity, or a causal connection between her alleged protected activity and any adverse employment action.

## POINT III

### ALL TITLE VII CLAIMS AGAINST DEFENDANT MATOS SHOULD BE DISMISSED

Finally, this Court should dismiss all claims against Defendant Matos pursuant to Title VII. Plaintiff's "First" and "Second" Causes of Action clearly specify that Plaintiff is attempting to bring claims of gender discrimination and retaliation against Defendant Matos pursuant to Title VII. See ECF Dkt. No. 1 at ¶¶ 105-147. However, there is no liability for individual defendants under Title VII. *See Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004). Accordingly, the Court should dismiss all claims against Defendant Matos pursuant asserted under Title VII.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant this motion and dismiss the Complaint in its entirety, together with such other and further relief as this Court deems just and proper.

Dated:        New York, New York
              May 22, 2020

                              **JAMES E. JOHNSON**
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-125
                              New York, New York 10007
                              (212) 356-1105
                              jshaffer@law.nyc.gov

                      By:    _____
                              J. Kevin Shaffer
                              Assistant Corporation Counsel

Bruce Rosenbaum,
J. Kevin Shaffer,
   Of Counsel.

- 22 -